WHITE, et ux. *vs* ROSS.

1. In detinue for a slave, *it seems* that the verdict should be governed by the value of the slave, at the time the suit is commenced or demand made.
2. In the action of detinue for a slave, the death of the slave, pending the action, will not discharge the judgment.
3. So, where, in detinue for a slave, the slave died pending the action, and a judgment was rendered in favor of the plaintiff in the action, *for the slave, or the value*; it was held, that Chancery had no power to interpose in favor of the defendant, and enjoin the judgment, on the ground of the death of the slave, pending the suit.

This case was upon a bill for injunction, in Mobile Circuit Court.

The complainant, Ross, set out, that on or about the fifteenth of April, 1827, one Beckley, died in the County of Mobile, having previously made and published a last will and testament, by which he nominated and appointed the said Ross, and one Chiles, as his executors, and Sarah Beckley, his wife, as executrix. That after said Beckley's death, the complainant, alone, qualified, as the executor; and took out letters testamentary on his estate, from the Or-

phans' Court of Mobile. That the said Beckley died, possessed of considerable real and personal estate, including several slaves, all whom, as the complainant understood and believed, were claimed and held by his testator, in his own right; and who, accordingly went into the complainant's possession, as the executor. That after the death of the testator, and after the complainant had qualified as the executor, an action of detinue was commenced, in the District Court of the United States, against the complainant, in his private and individual right, to recover certain slaves, that is to say, Jenny, Phil, Franky, Amy and Washington—which action was prosecuted in the name of the present defendants. That, some time thereafter, the said suit having been transferred to the Circuit Court, the said complainant resigned his trust, as executor as aforesaid; and that the said Chiles, the co-executor, then qualified and received into his possession, the before mentioned slaves, for the recovery of whom, the before mentioned action of detinue was commenced: one of which slaves, to wit, Phil, was then removed into the County of Greene. That at the spring term, 1830, of the Mobile Circuit Court, the said action of detinue was tried, and a verdict and judgment rendered against the complainant, in favor of the present defendants, for the said slaves or their value.

The bill further represented, that previous to the rendition of the said verdict and judgment, the before named slave, Phil, one of the slaves included in the aforesaid verdict and judgment, departed this life, in the County of Greene; but which fact, at the time of the rendition of the said judgment, the said

complainant was ignorant of. That, notwithstanding this fact, an execution was issued against the said complainant, for the said slaves, or their value, including the said Phil, or his value, so deceased, as aforesaid—the complainant, therefore, prayed an injunction, &c.

The order for the injunction being granted by the Chancellor, pursuant to the prayer of the bill, the cause came on for hearing upon a demurrer to the bill; which was overruled, and the injunction perpetuated.

The defendant took a writ of error, and assigned, for cause of reversal—that the Court below erred in overruling the demurrer of the defendants to the complainant's bill.

*Gordon*, for the plaintiff in error. The only question arises in reference to the death of the slave.— Was it a good defence at law, and, if not, is it one in equity?

Trespass, detinue and trover, are all founded in tort. The recovery must establish a wrongful act. In detinue, where a party defendant choses to retain the property, and pay the value, he may do so, and the property, in right, vests in him. In trespass, it is no excuse, that the property is tendered back. In trover, neither is it an excuse, that the property is destroyed. Then, what is there in detinue, to distinguish it from trover, in this respect?

The pleadings refer to the commencement of the action—so does the verdict. The detainer is estopped from saying the property was yours, but it is gone.

In 4th *Bibb*, 270, the point is directly decided.   It was there ruled, that the death of the property was at the loss of the detainer.—*Jones on Bail.* 94—*Gilmer's Rep.* 341.   In the last authority, two Judges, out of three, decided the point in our favor: and these cases all unequivocally establish the principle, that the loss of the property, pending the action, is no defence at law.   Then can it be in equity ?   Equity follows the law, and does not vary from it—and is not superior to it.   There is as much reason then, in favor of the principle, in equity, as at law.   The property might have been more safe with the defendants than with Ross, who committed a tort by the detention of the slave.   The complainant might have employed the slave in a dangerous occupation—may have sent him to a sickly residence.   There is no fault in us ; we have complainant's word that the slave is dead, but we do not know it.   He conveyed him away; and now answers our judgment that the slave is ours, and was wrongfully kept out of possession, by an allegation of his death.   This death may have been the result of the first tort—the detention :  We surely can not be affected in this way. It is conceded that in trover, if the property dies, it is the loss of the person converting.   So in trespass— and so in detinue.   Suppose the property converted be destroyed by the detainer ?   Is he not liable ?

*Stewart*, contra.


TAYLOR, J.—The bill in this case alleges, that pending an action of detinue between the parties, in which Ross was defendant, and in which a recovery

was had against him of a slave, or the value: the slave died.   That the slave, at the time of his death, was living at a considerable distance from the residence of the complainant, and that he was not informed of his death until after the judgment was recovered against him; and prays that the judgment at law, for the value of the slave may be perpetually enjoined.

To this bill a demurrer was filed in the Circuit Court, which was overruled, and a perpetual injunction decreed, according to the prayer thereof.

It is now insisted that the demurrer should have been sustained.

In support of the decree of the Circuit Court, the defendant in error takes two grounds.

1st. That by bringing *detinue*, the plaintiffs in error elected to retain the property in the slave in themselves.

2d. That the value, *at the time of the verdict*, was that which the jury was bound to ascertain, and the slave being then dead, could be of no value.

It may be admitted that the plaintiffs in the action at law, did prefer the recovery of the slave in person, to the value; but their wishes on the subject would not secure their object.   Notwithstanding their desire to obtain possession of the slave, it was entirely in the power of the defendant to defeat that wish, by paying the value as assessed by the jury, and thus make the slave his own.

But it is said the profits and the property sued for are all that can be demanded of the defendant in such an action; that the delivery of a dead body would not be permitted, and for this reason, pay-

ment of damages; in such case, of necessity, dischar-
ges the judgment.

This would be a dangerous doctrine, and one,
which it is believed, is not established by authority.
That is, that the death or destruction of the thing
sued for, pending the action, would be a fact suffici-
ent to prevent any recovery for its value.

It is not pretended that slaves stand in a different
situation, in this respect, from other property.

It is true we can not suppose such a diabolical
disposition in any person, as to commit murder to
prevent a recovery against him in a suit. But the
high state of excitement and rancorous feelings
which are often produced by a lengthy litigation,
might induce defendants, when they found the result
must be against them, to destroy property sued for,
of other kinds, and that in so secret a manner that it
would be difficult, if not impossible for the plaintiff to
prove that the destruction was intentional.

Accordingly, we find it has been decided in Eng-
land, where a suit had been brought for title papers,
and pending the action the defendant destroyed
them, that the measure of damages should be the va-
lue of the land.

Suppose the title papers had been destroyed by
accident, as the burning of the house of the defendant,
can we suppose the judgment would have been dif-
ferent? It would have been equally a loss to the
plaintiff, and one which might never have occurred,
had they been delivered to the plaintiff without suit.

Although we can not believe that slaves would
ever be murdered to prevent a recovery of them, yet
they might not be attended upon with the same care,

if sick, or furnished with the same comforts, if well, that they would be were they the undisputed property of the defendant, and which their wants required.

Nor can the circumstance, that the profits of the property sued for, are recovered in the action of detinue instead of interest, make any difference. This might often operate to the benefit of the defendant, as many things, which might be the subject of the action, produce no profit at all, and the party might always relieve himself from the payment of profits, by surrendering the possession to the rightful owner.

As to the second ground, taken by the defendant in error, it is in no case, determined that the value of the property, at the date of the judgment, is to govern the verdict of the jury. Nor can I see any good reason, why a different rule should prevail, in this case, from that which should govern in an action of trover ; and I am strongly inclined to the opinion, that the verdict should be governed by the value, at the time of suit brought, or demand made.

There is one reason, which seems strongly to forbid the defence attempted to be set up, in this case. It is, that if the plaintiffs at law, had not have been wrongfully kept out of the possession of his slave, he might have sold him while in life and health ; and indeed, the defendant may have sold him, and while he proves his death, to prevent a recovery, may have in his pocket the proceeds of the sale.

But it is answered, if the defendant had sold him, this might be proved on the trial, and the price which he received for him be recovered, as damages, in addition to the profits.

5 s. & p.        17

It does seem to me, this would be introducing an investigation foreign to the subject, and into which the plaintiff would have no right to inquire. If he is entitled to the value of the property, at the time of the trial only, how can his rights be affected, by the the person in whose possession the value may have · deteriorated or enhanced.

If, after the sale, property of the kind had risen a hundred per cent., the defendant could not prove this, to reduce the amount of the verdict—nor if, by some change in the market, a proportionate fall had taken place after the sale, and before the trial—would it be proper to give evidence to that effect, and make the defendant responsible for whatever he had received? If the slave be dead, at the time of the trial, it is precisely the same to the plaintiff, whether he died in the possession of the defendant or any third person, or whether the defendant had lent, hired or sold him.

Reason and the elementary principles of the law, therefore, would seem to determine, that the death of the slave, pending the suit, would not vary the rights of the parties. Fortunately, however, we are not left to the guidance of these alone, but have the light of so many as three decisions, in the highest judicial tribunals of as many of our sister States, which are precisely in point.

aGilmer's Rep. 341.   In *Austin's ex'ors* vs *Jones*,[a] it was determined by the Court of Appeals of Virginia, that such a defence was unavailing. It is true, the pleadings, in that case, did not bring the direct question in issue before the jury, and some of the judges do not give definitive opinions upon it, owing to that circum-

stance. But all of them, except Judge *Coalter*, who
dissented, most strongly intimated that such was their
opinions—indeed their language will bear no other
construction; and Judge *Brook* is plain and decisive
on the subject. He says, " the object of the action
of detinue, is to recover the specific property detain-
ed, or its value, and damages, for the detention; it is
like trover, an entire action; judgment for the defen-
dant, is a good bar in an action of trover for the
same thing. So, a judgment in trover gives the pro-
perty to the defendant, and is a bar to an action of
detinue.

It is not denied, that the destruction of the property,
before trial, is no defence in the latter action: in that
action the question is, to whom did the property belong
at the time of the conversion? and its object is to re-
cover the value thereof, in damages. The action of
detinue is only a broader action—substantially, it is
the same, with the addition, that the specific proper-
ty may be recovered, if to be had, and if not, the al-
ternative value, with damages for the detention.

" According to the form of the action of detinue,
also, it can not be maintained for the hire of proper-
ty, and damages, for its detention only. In both ac-
tions, the value of the property must be recovered,
or nothing: so that, in this case, if the death of
the slave is to avail, the judgment must be for
the defendant, as to her. An omission to find the
value of the slave by the jury, would have rendered
the verdict imperfect, and no judgment could have
been given on it, for hire and damages.

"But, it is contended, that proof of the death of
the slave, relates to the value, and not to the posses-

sion.  Is it correct, to say that proof of the non-ex-
istence of a thing, is proof of its value?  Value is a
question of *plus* or *minus*.  The inquiry pre-supposes
the existence of the property, and possession in the
defendant.  It goes to show, that he was not in the
possession at the time of the trial; that is, that he
was not in a condition to deliver her to the plaintiff,
which is interdicted.  The plea relates to the time
of suing out the writ, or to some previous period, as
regards the possession, and not to a time subse-
quent."

[a 4 Bibb 270]  The case of ——— vs ———,[a] decided by the
Court of Appeals of Kentucky, sustains the same
doctrine.  There, as here, the only question was as
to the effect of the death of the slave, pending the
action of detinue, upon the judgment, and it was de-
termined, that it should be for the value of the slave,
at the commencement of the suit.

And, in North Carolina, the law is the same.—See
[b Martin's Rep. 74.] the case of *Skipper* vs *Hargrove*,[b] in which it was de-
cided, that the plaintiff should have judgment, though
the slave, for which the action was brought, died af-
ter the demand.

English authorities can not be expected to be ad-
duced.  The action of detinue is rarely resorted to,
there, because the wager of law would defeat it.—
With us, that objection does not apply; and it is be-
coming a favorite and valuable remedy, particularly
when the title to slaves is the subject of dispute.—
But, if the loss or destruction of the property were
to defeat a recovery, trover, for this reason, would
supplant it here, as completely as it has done in Eng-
land, because of the wager of law.

The decree must be reversed, and the bill dismissed, at the cost of Ross, the defendant in error.

LIPSCOMB, C. J., not sitting in this cause.